IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JACK M. PIERCE,                          )
                                         )
                                         )
                    Plaintiff            )       Civil No.08-1091-AA
                                         )
            v.                           )       OPINION AND
                                         )       ORDER
MICHAEL J. ASTRUE,                       )
Commissioner of Social Security,         )
                                         )
                    Defendant.           )

DAVID B. LOWRY
9900 S.W. Greenburg Road
Portland, OR 97223
        Attorney for Plaintiff

KENT S. ROBINSON
Acting United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

DAVID MORADO
Regional Chief Counsel
LEISA A. WOLF
Special Assistant U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075
        Attorneys for Defendant

AIKEN, District Judge:

Plaintiff Jack Pierce ("Pierce") seeks judicial review of the Social Security Commissioner's final decision denying his application for benefits under Title II of the Social Security Act (the "Act"). This court has jurisdiction under 42 U.S.C. § 405(g). The Commissioner's decision should be REVERSED and REMANDED for the reasons below.

## PROCEDURAL BACKGROUND

Born in 1956 (Tr. 132), Pierce reports "zero" education. Tr. 142.[1] Between 1980 and 2002 Pierce reports work as an unskilled laborer. Tr. 137, 252. Pierce applied for Disability Insurance Benefits ("DIB") on August 22, 2003, alleging disability since May 14, 2003. Tr. 132-34. Pierce initially alleged disability due to a heart attack, diabetes, ankle surgery, and knee, elbow, shoulder, and back pain. Tr. 136. Pierce subsequently applied for Supplemental Security Income ("SSI") on October 12, 2004. Tr. 509. The Commissioner denied both of Pierce's applications initially and upon reconsideration. Tr. 81-84, 93-98, 101-21, 491-508.

An ALJ found Pierce not eligible for any disability benefits on December 13, 2007. Tr. 12. The Appeals Council subsequently remanded vacated and remanded the ALJ's decision regarding Pierce's SSI application only on August 28, 2008. Tr. 12-14. The Appeals Council took no action pertaining to Pierce's concurrent DIB claim (*Id.*), making that decision the Commissioner's final decision regarding Pierce's DIB application.

Thus, this court reviews the ALJ's decision regarding Pierce's DIB application only.

---

[1]Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on March 23, 2009 (Docket #11).

2 - OPINION AND ORDER

## MEDICAL BACKGROUND

Orthopedic surgeon Dr. Skrzynski assessed a probable loose body and meniscus tear of Pierce's left knee on March 4, 2002, and recommended arthroscopic surgery. Tr. 407. X-rays at this time showed mild degenerative changes of the right knee (Tr. 403), and degenerative changes and possible effusion of the left knee. Tr. 405. Dr. Skrzynski performed arthroscopic surgery on March 26, 2002. Tr. 399.

Treating physician Dr. Andone followed Pierce's diabetes mellulitis and provided primary care for Pierce between May 12, 2003, and November 3, 2003. Tr. 271-34; 437-72. During this time Dr. Andone repeatedly noted that Pierce's diabetes was not adequately controlled. Tr. 272-3, 453. Dr. Andone also credited Pierce's reports that he could not afford diabetic treatment supplies (Tr. 271, 299, 457, 460, 465), and endeavored to help him obtain these materials. Tr. 451.

Dr. Andone also followed Pierce's hepatitis. Tr. 466. On October 30, 2003, liver biopsy results showed hepatitis C. Tr. 384-86.

On January 31, 2005, examining physician Dr. Davidoff evaluated Pierce for Disability Determination Services ("DDS").[2] Tr. 364-67. Dr. Davidoff stated that she reviewed Pierce's medical records, specifically a "triage form, emergency department note, and encounter forms." Tr. 364. She also stated that Pierce was a poor historian, but accepted Pierce's reported history of diabetes, coronary artery disease, and multiple joint problems. Tr. 364-65. Dr. Davidoff subsequently conducted a physical examination and diagnosed diabetes mellitus with neuropathy,

---

[2]DDS is a federally-funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. § 404.1503.

a heart impairment, which she described as "status post myocardial infarction one year ago, current angina under suboptimal control," and "multiple arthralgias in the knees, ankles, elbows and shoulders consistent with traumatic osteoarthritis." Tr. 367.

Regarding Pierce's heart, the operative reports relating to Pierce's March 2002 knee surgery contain an ECG showing normal sinus rhythm. Tr. 424. On May 14, 2003, Dr. Andone noted Pierce's report of chest pain, with arm and jaw pain, and found an irregular heartbeat. Tr. 451. On May 23, 2003, Dr. Andone noted an "MI [myocardial infraction] x 1 ½ weeks ago (wasn't hospitalized)". Tr. 282. An X-ray on September 15, 2003, showed normal chest anatomy. Tr. 317. An October 30, 2003, abdominal ultrasound report listed "coronary artery disease" among Pierce's diagnoses. Tr. 386. Finally, on June 4, 2004, Dr. Andone cited Pierce's atypical chest pain and cardiologist Dr. North's test results.[3] Tr. 466. Here Dr. Andone noted that a nuclear perfusion scan showed "no evidence of ischemia and an EF [ejection fraction] of 51%." Tr. 466.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month duration requirement. 20 C.F.R. § 404.1509, 404.1520(a)(4)(ii). If the claimant does

---

[3]Dr. North's treatment records are not in the record before this court.

not have such a severe impairment, he is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. § 404.1520(e); Social Security Ruling ("SSR") 96-8p (*available at* 1996 WL 374184).

The ALJ uses this information to determine if the claimant can perform his past relevant work at step four. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can perform his past relevant work, he is not disabled. If the ALJ finds that the claimant's RFC precludes performance of his past relevant work the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1520(f); *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If the claimant cannot perform such work, he is disabled. *Id.*

The initial burden of establishing disability rests upon the claimant. 20 C.F.R. § 404.1512(a); *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and

work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1566.

## THE ALJ'S FINDINGS

The ALJ found Pierce's bilateral knee pain and type II diabetes mellitus severe at step two in the sequential proceedings. Tr. 26. The ALJ discounted Pierce's reported history of heart attacks and therefore found his related symptoms, notably shortness of breath and chest pain, non-severe. Tr. 26-27. The ALJ also found Pierce's gastroesophegeal reflux disease, hypertension, and hepatitis-C non-severe. Tr. 26. The ALJ assessed Pierce's testimony as "simply not credible," Tr. 33.

The ALJ found that Pierce retains the RFC to perform "light to medium exertion with postural, manipulative, environmental, and vocational non-exertional limitations. Tr. 31. However, the ALJ included numerous additional limitations, allowing Pierce: (1) a "sit-stand option . . . to change from standing to sitting after prolonged standing of 30-consecutive minutes or more;" (2) the ability to sit eight hours cumulatively, but not consecutively, and stand two hours, again cumulatively but not consecutively; (3) the ability to walk up to one block at a time, without use of an ambulative assistive device; (4) no climbing ropes, ladders, scaffolds, or kneeling, crawling, crouching, and squatting; (5) no overhead reaching with the "left upper extremity" or "fast paced or constant manipulation of reaching and grasping;" (6) no exposure to extreme hot or cold temperatures, and hazards such as working at unprotected heights or machinery with exposed moving parts; and (7) no work requiring more than simple words or adding and subtracting more than simple sums. Tr. 34.

At step four, the ALJ found that Pierce could not perform his past relevant work. *Id.* The

ALJ subsequently found that Pierce has a marginal education (*id.*), and that any issue of transferable work skills is "not material" to a disability determination because the Commissioner's regulations support a finding of "not disabled." Tr. 35. Finally, the ALJ found that Pierce can perform significant work in the national economy and is therefore not disabled. Tr. 35-36.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006)), *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id., see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Pierce contends that the ALJ erroneously rejected an examining physician's opinion,

improperly assessed his credibility, inappropriately applied SSR 96-8p, and based his conclusions upon erroneous step five findings.

## I.       Medical Source Statements

Pierce's credibility challenge asserts that the ALJ erroneously rejected examining physician Dr. Davidoff's opinion. Pl.'s Opening Br. 17. The court separately addresses medical evidence.

### A.       Standards: Medical Source Statements

Generally, the ALJ must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ must also generally give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician in favor of an examining physician. *Id.*, at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Disability opinions are furthermore reserved for the Commissioner. 20 C.F.R. § 404.1527(e)(1).

### B.       Dr. Davidoff's Opinion

Examining physician Dr. Davidoff evaluated Pierce on January 3, 2005, and diagnosed diabetes with neuropathy, a history of mycardial infarction, angina under poor control, and arthritis of the knees, ankles, elbows, and shoulders. Tr. 364-67. Dr. Davidoff assessed the following functional limitations:

> [Pierce] can stand and/or walk between 2-6 hours in an eight-hour day with breaks at least every hour and for any exertional chest pain. This is secondary to his angina. It is also secondary to the multiple arthralgias, status post multiple surgeries and injuries. He can sit

without restrictions. No assistive device is used. He can lift and/or carry about 25-30 pounds occasionally and 10-25 pounds frequently, no more seondary to the angina primarily. There are frequent postural limitations because of the angina. There are no specific manipulative or environmental limitations.

Tr. 367.

The ALJ noted Dr. Davidoff's report that Pierce "moves well," as well as Dr. Davidoff's report of Pierce's height and weight. Tr. 30. The ALJ found that Pierce's weight has remained stable between Pierce's alleged disability onset date and Dr. Davidoff's examination. *Id.* The ALJ also found that Dr. Davidoff did not recommend that Pierce use an ambulative assistive device. The ALJ cited Dr. Davidoff's finding that Pierce could perform "light-to-medium" exertional work, with frequent postural limitations "because of his reported 'agnina.'" *Id.* The ALJ concluded that she gave "some but not controlling weight to the impartial medical expert and therefore a significant portion of Dr. Davidoff's suggested exertional and non-exertional limitations are incorporated into the overall determination of the claimant's residual functional capacity. . . ." *Id.*

## C.    Analysis

The court first notes that the ALJ did not call a medical expert to Pierce's August 9, 2007, hearing. Tr. 43-80. The court therefore finds that the ALJ's reference to "impartial medical expert" refers to examining physician Dr. Davidoff.

Because Dr. Davidoff reached the same diagnostic conclusions as Pierce's treating physician, Dr. Andone, *supra* 3-4, regarding Pierce's arthralgias, cardiac history, and diabetes, the ALJ must provide "clear and convincing" reasons for rejecting Dr. Davidoff's diagnostic opinion in favor of the opinion of a reviewing physician. *Lester*, 81 F.3d at 830.

The ALJ's analysis fails to consider any of Dr. Davidoff's clinical findings and diagnoses,

other than Pierce's measured weight. This is a significant omission. While the ALJ need not discuss

evidence that is neither significant nor probative, *Howard v. Barnhart*, 341 F3.d 1006, 1012 (9th Cir.

2003), Dr. Davidoff is the only examining physician of record. The remaining medical record is

additionally limited. The ALJ provides no explanation for her omission, and thus failed to give

"clear and convincing" reasons for rejecting Dr. Davidoff's opinion in favor of a medical expert's

opinion. Tr. 30. The ALJ's omission of Dr. Davidoff's clinical findings and diagnostic conclusions

is not sustained.

In summary, the ALJ's assessment of Dr. Davidoff's opinion is not sustained.

## II.    The ALJ's Credibility Finding

Pierce  challenges the ALJ's credibility findings.

### A.    Credibility Standard

The ALJ performs a two-step analysis in her credibility finding. First, the ALJ determines

if the claimant has shown an underlying impairment which may "reasonably be expected to produce

pain or other symptoms alleged." *Lingenfelter,* 504 F.3d at 1036 (citing *Smolen v. Chater,* 80 F.3d

1273, 1281 (9th Cir. 1996)). If there is no finding of malingering, the ALJ proceeds to the second

step, where she must provide "clear and convincing" reasons for finding a claimant not credible. *Id.*

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court

to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*,

50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991)

(en banc)). The ALJ may consider objective medical evidence and the claimant's treatment history,

as well as the claimant's daily activities, work record, and observations of physicians and third

parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* Once a claimant establishes an impairment, the ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### B.    Credibility Analysis

The ALJ found Pierce not credible. The ALJ based this analysis upon: (1) Pierce's medical record; (2) Pierce's alleged failure to seek treatment or follow prescribed treatment; (3) Pierce's allegedly inconsistent testimony; (4) Pierce's activities of daily living; and (5) Pierce's work history. Tr. 32-34.

#### a.    Medical Record and Credibility

The ALJ may cite a claimant's medical record in her credibility analysis. *Smolen*, 80 F.3d at 1284. However, once a claimant establishes a medically-determinable impairment, the ALJ may not require that specific medical evidence support the degree of a claimant's reported symptom testimony. *Bunnell*, 947 F.3d 346 (en banc).

##### i.    Diabetes and Knee Impairments

The ALJ repeatedly found Pierce's symptom testimony regarding his established diabetes and knee impairments unsupported by the medical evidence. Tr. 28, 32. The medical record clearly establishes that Pierce had these impairments. Tr. 271-34; 399-405; 437-72. The ALJ may not subsequently require that the medical record corroborate the degree of the claimant's alleged

symptom testimony. Lingenfelter, 504 F.3d at 1036 (citing Reddick v. Chater, 157 F.3d 715, 722

(9th Cir. 1998). Therefore, the ALJ erred in requiring the medical record to document the degree

of Pierce's alleged symptom testimony.

### ii.    Cardiac Impairment

The ALJ also found Pierce's testimony about his chest pain and side effects secondary to his

alleged myocardial infraction ("heart attack") unsupported by the medical evidence. Tr. 27, 30. The

ALJ need not accept a claimant's testimnoy regarding an impairment where the record does not show

the impairment exists. *See Lingenfelter*, 504 F.3d at 1036 (step one in a credibility analysis requires

that the claimant establish an impairment which could reasonably cause the reported symptom).

The record shows that Pierce was scheduled for a cardiac study in May 2003. Tr. 309. The

results of this study are not in the record before this court. The ALJ noted treating physician Dr.

Andone's June 4, 2004, report showing "no evidence of ischemia." Tr. 29. The record supports this

citation: Dr. Andone stated that Pierce had "Chest pain, atypical, investigated by Dr. North

cardiology with a nuclear perfusion scan with no evidence of ischemia and an EF of 51%." Tr. 466.

The ALJ failed to note Dr. Andone's May 23, 2003, chart noting stating that Pierce experienced a

mycardial infraction (heart attack).

The ALJ did not explain why she found that this evidence establishes that Pierce does not

have a heart impairment. Here the court notes that the ALJ may not substitute her own judgment for

that of a physician. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)(hearing examiner, not

qualified as a medical expert, should not go beyond the record to make his own assessment of the

claimant's condition). Further, as discussed above, the ALJ improperly rejected examining physician

Dr. Davidoff's opinion that Pierce had a history of mycardial infarction and angina under poor control.

The ALJ's finding that Pierce's testimony regarding his cardiac symptoms was unsupported by an established impairment is not properly based upon the record. The ALJ's finding that Pierce's symptom testimony regarding his cardiac impairments was not credible is therefore not sustained.

### b.    Pierce's Compliance With Treatment

A claimant must follow prescribed treatment in order to obtain benefits. 20 C.F.R. § 404.1530(a). The ALJ's credibility findings may cite a claimant's unexplained failure to follow treatment. *Smolen*, 80 F.3d at 1284. However, the ALJ may not fault a claimant for failing to seek treatment he cannot afford. *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). The court separately addresses Pierce's compliance with treatment regarding his knee and ankle pain and his diabetes.

### i.    Knee and Ankle Pain

The ALJ stated that Pierce "acknowledged that he only sought treatment for his alleged knee and ankle pain sporadically." Tr. 32. The ALJ subsequently inferred that Pierce's symptom testimony regarding these impairments was not credible. *Id.* Pierce challenges this finding, asserting that he could not afford frequent physician visits. Pl.'s Opening Br. 15-16. The Commissioner now asserts that conservative treatment may be "sufficient to discount a claimant's testimony regarding severity of an impairment." Def.'s Br. 8 (quoting *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007)).

As noted, this court must affirm an ALJ's "inferences reasonably drawn from the record."

*Batson*, 359 F.3d at 1193. Here, the ALJ inferred that Pierce's lack of treatment for his knee and ankle pain detracted from the credibility of the statements regarding this pain. Tr. 32. The record shows no treatment for ankle pain. The only reference to Pierce's ankle pain is in examining physician Dr. Davidoff's report summarizing Pierce's own reports. Tr. 367. The record thus supports the ALJ's finding that Pierce received minimal treatment for an ankle impairment.

Regarding Pierce's knee pain, the record shows that treating orthopedic surgeon Dr. Skrzynski assessed a "probably loose body" and meniscus tear. Tr. 407. Dr. Skrzynski subsequently performed arthroscopic surgery on March 26, 2002. Tr. 399–400. Concurrent X-rays showed degenerative changes in the right knee with possible joint effusion (Tr. 405), and "mild" degenerative changes in the left knee. Tr. 403.

The ALJ is permitted to infer that conservative treatment discounts a claimant's complaints regarding the specified impairment. *Parra*, 481 F.3d at 751 (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)) (upholding an ALJ's reference to over-the-counter pain medication as "conservative" treatment inconsistent with disability). The record does not support the ALJ's finding that Pierce received only "conservative treatment" regarding his knee impairment. Instead, the record shows that Pierce had invasive reconstructive surgery. Tr. 399-400.

Therefore, the ALJ's reasoning addressing Pierce's credibility regarding his ankle complaints is affirmed. The ALJ's finding that Pierce received conservative treatment only regarding his knee impairment is not based upon the record and is therefore not sustained.

### ii.    Diabetes

Notably, the ALJ also found that "clearly the claimant's type-II diabetes mellitus is severe

in part due to the claimant's documented "non-compliance" in monitoring his blood-sugars and taking his diabetic oral medications as directed." Tr. 28. The ALJ subsequently cited medical records showing that Pierce reported drinking less, and also reported that he could not afford medical supplies related to his diabetes management. *Id.* The ALJ concluded, that "Apparently the claimant was still able to buy alcohol while at the same time telling Dr. Andone that he 'can't afford' a $30.00 blood-sugar glucometer." *Id.*

This finding was made in assessing the severity of Pierce's diabetes at step two, which the ALJ accepted as severe. Tr. 26, 28. However, the ALJ's use of sarcasm and indication that she disbelieved Pierce's testimony that he could not afford diabetic supplies impugns his credibility and is thus addressed in the context of the ALJ's credibility assessment.

The record clearly shows that Pierce repeatedly and consistently reported that he could not afford diabetic treatment supplies, and that treating physicians Dr. Andone and her staff accepted Pierce's reports and endeavored to assist him in obtaining the supplies. Tr. 296, 299, 396, 437, 451, 453, 457, 468-70, 472. As noted, the ALJ may not fault a claimant for failing to obtain treatment he cannot afford. *Gamble*, 68 F.3d at 321. The ALJ therefore erred in chastising Pierce for reporting that he could not afford treatment in the context of his sporadic compliance with diabetic treatment recommendations.

### c.    Pierce's Allegedly Inconsistent Testimony

The ALJ additionally found Pierce's testimony regarding his literacy (Tr. 33) and driver's license internally inconsistent. Tr. 32. The ALJ may cite a claimant's contradictory testimony regarding his symptoms, or "other testimony by the claimant that appears less than candid" in finding

a claimant not credible. *Smolen*, 80 F.3d at 1284.

### i.      Illiteracy

In rejecting Pierce's report of shoulder pain, the ALJ cited Pierce's reports of "zero" education. Tr. 33. The ALJ wrote:

> In reviewing the claimant's testimony, despite his written claim of "zero" education, the claimant acknowledge that he had been given a reading, writing and math test with results that placed him at the 5th grade level. Noting the claimant's [sic] has completed his requisite reports to SSA [Social Security Administration], pluse in consideration of his testimony and the requisite criteria to maintain a fuels and maintenance log as a truck driver, the undersigned observes the claimant is functioning at the average level of literacy, successfully able to communicate in most social or work situations.

*Id.* The ALJ immediately concluded that Pierce's testimony regarding his pain, shoulder pain, fatigue, and shortness of breath with atypical chest pain was "not credible." Tr. 33.

This analysis is flawed for two reasons. First, the ALJ offered no authority for her finding that Pierce has "average" literacy. The ALJ's administered a spelling test at Pierce's hearing (Tr. 52), and subsequently concluded that Pierce has a fifth-grade education. Tr. 33. The ALJ may not substitute her own judgment for that of a diagnosing medical source. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)(hearing examiner, not qualified as a medical expert, should not go beyond the record to make his own assessment of the claimant's condition). The record before this court is silent regarding Pierce's alleged reading ability. If the ALJ determined that Pierce's literacy was relevant to his disability claim, she should have obtained relevant testing rather than making her own findings. This court cannot affirm the ALJ's findings based upon its review of the record.

Second, the Commissioner's regulations address "limited education" rather than literacy. 20

C.F.R. Pt. 404 Subpt. P, App. 2 §§ 201-203.  Thus, the ALJ's finding regarding literacy is not relevant to a determination of disability.

Therefore the ALJ's findings regarding Pierce's alleged literacy in rejecting his allegations of shoulder pain are not sustained.

### ii.    Driver's License

The ALJ also found Pierce's testimony regarding his driver's license inconsistent, inferring that this impugned his credibility.  Tr. 32.  Here the ALJ noted that Pierce's past relevant work required a valid driver's license and insurance, but "finds it strange [Pierce] reported to Dr. Davidoff and testified at hearing that he 'doesn't have a driver's license.'"  Tr. 32.  The ALJ continued that Pierce testified that he "lost his driver's license because of owing 'back child support' but that this claim is "equally strange"  because Pierce's SSA applications reflect that his "lone remaining child under age 22 'resides with him.'"  *Id.*  The ALJ therefore concluded that Pierce's testimony regarding his driver's license is not logically credible.  *Id.*

This court must affirm an ALJ's credibility findings if they are based upon "inferences reasonably drawn from the record."  *Batson*, 359 F.3d at 1193.  The court must also defer to the ALJ's interpretation of a claimant's activity if two reasonably plausible explanations arise.  *Rollins v. Massinari*, 261 F.3d 853, 857 (9th Cir. 2001).  However, the ALJ's analysis fails to establish that Pierce's present status without a driver's license is inconsistent with possessing a license when Pierce performed his past relevant work as a shuttle driver.  Further, the record before this court does not show when Pierce did or did not have custody of his children or owe child support.  The ALJ's finding regarding Pierce's testimony addressing child support and his driver's license is therefore

unsupported by the record and is not sustained.

### d.   Pierce's Activities of Daily Living

Pierce asserts that the ALJ erroneously found that his activities of daily living detracts from his credibility. Pl.'s Opening Br. 17.

The ALJ's credibility analysis may cite a claimant's activities of daily living. 20 C.F.R. § 404.1529(a); 20 C.F.R. § 405.1529(c)(3)(i); *Smolen*, 80 F.3d at 1284; SSR 96-7p at *3 (available at 1997 WL 374186). As noted, while more than one plausible explanation may arise regarding a claimant's activities, this court must defer to the ALJ's interpretation where it is based upon substantial evidence. *Rollins*, 261 F.3d at 857.

Here the ALJ cited Pierce's ability to care for his personal needs and those of his pets, clean the house, wash dishes, shop, cook most meals, go for walks, play games, watch television, and independently use public transportation. Tr. 32. The ALJ may rely upon these activities in finding a claimant not credible if they are inconsistent with the claimant's claimed limitations. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Pierce testified that he cannot "walk a lot" (Tr. 53) or stand. Tr. 55. The activities cited by the ALJ are consistent with an inability to walk significant distances or stand for a prolonged period. The record therefore does not support the ALJ's finding that Pierce's activities of daily living are inconsistent with his symptom testimony. This finding is not sustained.

### e.   Pierce's Work History

The ALJ also discussed Pierce's work history, finding that Pierce worked after his knee surgeries. Tr. 32. The ALJ infers, but does not find, that Pierce consequently stopped working for

reasons unrelated to his knee pain. Pierce now asserts that he stopped working because his knee pain worsened. Pl.'s Opening Br. 16.

The ALJ may consider a claimant's poor work history in finding a claimant not credible. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). However, an ALJ may not chastise a claimant for attempting to work despite a disabling condition. *See Lingenfelter*, 504 F.3d at 1038 (finding a failed work attempt insufficient to discredit claimant). The ALJ's inference that Pierce's work history undermines his allegation of disability regarding his knee pain contravenes this standard and is therefore not sustained.

### C.    Credibility Conclusion

In conclusion, the court finds the ALJ's credibility finding unsupported by the record or substantial evidence. The reviewing court may affirm an ALJ's overall credibility finding where some aspects of it are not sustainable. *Bray*, 554 F.3d at 1227 (upholding credibility finding where one of five reasons cited by the ALJ was potentially erroneous); *Batson*, 359 F.3d at 1197. However, Pierce's conservative treatment for his alleged ankle pain alone does not constitute substantial evidence justifying rejection of all his remaining testimony. The ALJ's credibility finding is therefore not sustained.

### III.    The ALJ's Findings Under Social Security Ruling 96-8p

Pierce contends that the ALJ failed to find he can sustain regular work activity under SSR 96-8p, and also that the ALJ failed to consider all his impairments, both severe and non-severe, under SSR 96-8p.

///

**A.      Standard: Social Security Ruling 96-8p**

Social Security Ruling 96-8p addresses assessment of a claimant's residual functional capacity. SSR 96-8p (available at 1996 WL 374184). The Ruling defines the RFC assessment and instructs the ALJ to make narrative findings in construing a claimant's RFC. *Id.* at *2, 7. The Ruling also instructs the ALJ to consider "all relevant evidence" in making RFC findings, and to address both the claimant's exertional and nonexertional capacity. *Id.* at *5-6.

**B.      Regular and Continuing Work**

Pierce first submits that the ALJ violated SSR 96-8p because the ALJ failed to find that he may sustain work activity for eight hours per day or forty hours per week. Pl. Opening Br. 19. Pierce points to no evidence suggesting that the ALJ's RFC finding does not include the ability to work on a regular and continuing basis under SSR 96-8p. SSR 96-8p states that "ordinarily" the ALJ considers a claimant's ability to work eight hours per day, five days per week. SSR 96-8p at *1. This argument is therefore without merit.

**C.      Severe and Non-Severe Impairments**

Pierce also asserts that the ALJ failed to consider his "non-severe" impairments, specifically his hepatitis, in assessing his RFC. Pl.'s Opening Br., 20.

The ALJ's RFC assessment must consider all of a claimant's work-related limitations, stemming from both severe and non-severe impairments. 20 C.F.R. § 404.1545(a)(2); SSR 96-8p at *5. Pierce points to a liver biopsy showing "mild to moderate inflammation," and authorities describing the effects of hepatitis. Pl.'s Opening Br., 20. However, Pierce does not explain how his biopsy results created work-related limitations for Pierce, or point to hepatitis-related limitations

Pierce described in his own testimony. This submission is also without merit.

**D.     Evaluation of Medical Testimony in Accordance with SSR 96-8p**

Finally, Pierce asserts that the ALJ failed to provide appropriate reasons for rejecting Dr. Davidoff's opinion under SSR 96-8p. Dr. Davidoff's opinion is addressed above, and will not be addressed again.

In summary, Pierce's challenges to the ALJ's decision under SSR 96-8p are not sustained.

**IV.     The ALJ's Step Five Findings**

Pierce contends that the ALJ made erroneous step five findings, specifically asserting that the ALJ improperly relied upon the vocational expert's testimony. Pl.'s Opening Br. 23. Here Pierce asserts that the vocational expert's testimony was inconsistent with the *Dictionary of Occupational Titles*, and also claims that the vocational expert's testimony lacked foundation. *Id.* at 24-26.

At step five, the ALJ may solicit testimony from a vocational expert to establish the claimant's ability to perform work in the national economy. *Tackett*, 180 F.3d at 1099. The ALJ's hypothetical questions to the vocational expert must include all limitations supported by substantial evidence, but may exclude unsupported limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001). Because the ALJ presently erred in assessing Pierce's testimony and Dr. Davidoff's opinion, this court cannot find that the ALJ's RFC, and subsequent questions to the vocational expert, contains all work-related limitations. The ALJ's step five findings are therefore not sustained.

For this reason, Pierce's remaining submissions regarding the vocational expert's testimony

need not be addressed.

## REMAND

The ALJ erroneously evaluated Pierce's credibility and Dr. Davidoff's opinion. The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000.), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th Cir. 1989).

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman,* 211 F.3d at 1178 (quoting *Smolen,* 80 F.3d at 1292). The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart,* 340 F.3d 871, 876 (9th Cir. 2003) (citing *Dodrill,* 12 F.3d at 919); *Nguyen ,* 100 F.3d at 1466-67; *Bunnell v. Sullivan,* 947 F.2d 341, 348 (9th Cir. 1991).

Here, the ALJ failed to properly evaluate the medical evidence, specifically Dr. Davidoff's opinion and the evidence regarding Pierce's alleged heart impairment. The ALJ also failed to solicit

appropriate testimony from the vocational expert regarding the effect of Pierce's additional limitations. Piece's counsel additionally failed to solicit testimony from the vocational expert stemming from the improperly addressed evidence.

In such instances, award of benefits is inappropriate. *Harman*, 211 F.3d at 1180. The matter must be remanded for further proceedings addressing the improperly evaluated evidence cited above. *Id.* If necessary, the ALJ must then revise her RFC analysis and apply the correct medical-vocational guideline or obtain vocational expert testimony regarding Pierce's workplace limitations. Finally, the ALJ must make adequate step four and five findings incorporating any revised findings.

## ORDER

For these reasons, this Court REVERSES the Commissioner's final decision and REMANDS this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated this 10 day of ~~November~~, 2009.
December

Ann Aiken
United States District Judge